**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Deutsche Bank Trust Company Americas, as Trustee for the registered holders of WFRBS Mortgage Trust 2014-LC14, Commercial Mortgage Pass-Through Certificates, Series 2014-LC14,<br><br>                          Plaintiff,<br>    v.<br><br>Aroon Patel,<br>                    Defendant. | Case No. |

## COMPLAINT FOR BREACH OF CONTRACT

Deutsche Bank Trust Company Americas, as Trustee for the registered holders of WFRBS Mortgage Trust 2014-LC14, Commercial Mortgage Pass-Through Certificates, Series 2014-LC14 ("Lender"), acting by and through its Special Servicer, Rialto Capital Advisors, LLC ("Rialto"), and through its undersigned counsel, for its complaint against Aroon Patel ("Patel"), alleges as follows:

### The Parties

1.      Lender is a commercial mortgage-backed security holding trust and is the beneficiary of the Guaranty (as hereinafter described).  Lender's trustee is Deutsche Bank Trust Company Americas, a state member bank incorporated in New York with a principal place of business located at 60 Wall Street, New York, NY.  Lender is a citizen of New York.

2.      Rialto is the special servicer for Lender for the Loan (as hereinafter described) and, as such, has the power and authority to administer the Loan on behalf of Lender and to enforce the terms of the Loan Documents (as hereinafter described).

3.      Upon information and belief, Patel is an individual residing at 16033 Champion Drive, Spring, TX 77379.  Patel is a citizen of Texas.  Patel executed the Guaranty for the benefit

of Lender and its predecessors in interest.

<u>**Jurisdiction and Venue**</u>

4.     The Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Lender and Patel and the amount in controversy exceeds $75,000.00.

5.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because: (a) Patel has consented to and waived any objection to the jurisdiction of federal courts sitting in New York, New York in Section 4.9(b) of the Guaranty; and (b) a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

<u>**Background**</u>

**A.      The Loan Documents**

6.     On or about January 17, 2014, Rialto Mortgage Finance, LLC ("Original Lender") made a loan (the "Loan") to Quantum I-10 Partners, Ltd. ("Borrower") in the original principal amount of $8,600,000, as evidenced by that certain Promissory Note dated January 17, 2014 (the "Note").  The terms of the Loan are set forth in the Note and that certain Loan Agreement between Original Lender and Borrower dated January 17, 2014 (the "Loan Agreement").

7.     A true and correct copy of the original Note with all alonges affixed thereto is attached hereto as <u>Exhibit A</u>.

8.     A true and correct copy of the original Loan Agreement is attached hereto as <u>Exhibit B</u>.

9.     To secure the Loan, Borrower pledged improved real and personal property commonly known as the Holiday Inn Express – Houston I-10 West and located at 12323 Katy

Freeway, Houston, TX 77079 (the "Hotel") as collateral to Original Lender.

10.     Borrower's pledge of the Hotel to Original Lender is evidenced by, among other things, that certain Deed of Trust, Fixture Filing and Security Agreement effective as of January 17, 2014 and recorded in the office of the Harris County Recorder (the "Recorder's Office") on January 21, 2014, as Document Number 20140023290 (the "Deed of Trust").

11.     A true and correct copy of the original Deed of Trust is attached hereto as Exhibit C.

12.     The Loan is further secured by that certain Assignment of Leases and Rents executed on January 15, 2014, effective as of January 17, 2014, and recorded in the Recorder's Office on January 21, 2014 as Document Number 20140023291 (the "Assignment of Leases and Rents").

13.     A true and correct copy of the original Assignment of Leases and Rents is attached hereto as Exhibit D.

14.     In connection with the Loan, Borrower and Original Lender entered into that certain Cash Management Agreement dated January 17, 2014, which set forth additional conditions of the Loan (the "Cash Management Agreement").

15.     A true and correct copy of the original Cash Management Agreement is attached hereto as Exhibit E.

16.     On or about June 23, 2005, Patel and Holiday Hospitality Franchising, Inc. (together with its successor, Holiday Hospitality Franchising, LLC, "Franchisor") executed that certain License Agreement dated as of June 23, 2005 (the "Franchise Agreement").

17.     The Franchise Agreement was subsequently amended and assigned to Borrower, as licensee, by that certain Second Addendum to License Agreement dated May 3, 2010 and

3

Third Addendum to License Agreement dated August 6, 2012 between Borrower and Franchisor.

18.     A true and correct copy of the original Franchise Agreement and all subsequent amendments and assignments thereto is attached hereto as <u>Exhibit F</u>.

19.     In connection with the Loan, Patel executed that certain Guaranty of Recourse Obligations dated as of January 17, 2014 (the "Guaranty").

20.     A true and correct copy of the original Guaranty is attached hereto as <u>Exhibit G</u>.

21.     The Note, the Loan Agreement, the Deed of Trust, the Assignment of Leases and Rents, the Cash Management Agreement, the Franchise Agreement, the Guaranty and all of the other documents which evidence, secure or relate to the Loan may be referred to collectively as the "Loan Documents."

**B.     Assignment Of The Loan Documents To Lender**

22.     Original Lender assigned and/or endorsed the Loan Documents to RMF Sub 1, LLC ("Initial Assignee"), as evidenced by that certain: (a) Assignment of Deed of Trust, Fixture Filing and Security Agreement dated as of February 7, 2014 and recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130419 (the "Initial Assignment of Deed of Trust"); (b) Allonge (the "Initial Allonge"); (c) Assignment of Assignment of Leases and Rents dated as of February 7, 2014 and recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130420 (the "Initial Assignment of Assignment of Leases and Rents"); and (d) Omnibus Assignment (the "Initial Omnibus Assignment").

23.     A true and correct copy of the original Initial Assignment of Deed of Trust is attached hereto as <u>Exhibit H</u>.

24.     A true and correct copy of the original Initial Allonge is affixed to the Note.

25.     A true and correct copy of the original Initial Assignment of Assignment of

4

Leases and Rents is attached hereto as <u>Exhibit I</u>.

26.     A true and correct copy of the original Initial Omnibus Assignment is attached as <u>Exhibit J</u>.

27.     Initial Assignee thereafter assigned and/or endorsed the Loan Documents to Original Lender, as evidenced by that certain: (a) Assignment of Deed of Trust, Fixture Filing and Security Agreement dated as of February 7, 2014 and recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130422 (the "Subsequent Assignment of Deed of Trust"); (b) Allonge (the "Subsequent Allonge"); (c) Assignment of Assignment of Leases and Rents dated as of February 7, 2014 and recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130423 (the "Subsequent Assignment of Assignment of Leases and Rents"); and (d) Omnibus Assignment (the "Subsequent Omnibus Assignment").

28.     A true and correct copy of the original Subsequent Assignment of Deed of Trust is attached hereto as <u>Exhibit K</u>.

29.     A true and correct copy of the original Subsequent Allonge is affixed to the Note.

30.     A true and correct copy of the original Subsequent Assignment of Assignment of Leases and Rents is attached hereto as <u>Exhibit L</u>.

31.     A true and correct copy of the original Subsequent Omnibus Assignment is attached as <u>Exhibit M</u>.

32.     Original Lender assigned and/or endorsed the Loan Documents to Lender, as evidenced by that certain: (a) Assignment of Deed of Trust, Fixture Filing and Security Agreement dated as of February 7, 2014 and recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130425 (the "Assignment of Deed of Trust"); (b) Allonge (the "Allonge"); (c) Assignment of Assignment of Leases and Rents dated as of February 7, 2014 and

recorded in the Recorder's Office on April 1, 2014 as Document Number 20140130426 (the

"Subsequent Assignment of Assignment of Leases and Rents"); and (d) Omnibus Assignment

(the "Omnibus Assignment").

33.     A true and correct copy of the original Assignment of Deed of Trust is attached

hereto as Exhibit N.

34.     A true and correct copy of the original Allonge is affixed to the Note.

35.     A true and correct copy of the original Assignment of Assignment of Leases and

Rents is attached as Exhibit O.

36.     A true and correct copy of the original Omnibus Assignment is attached as

Exhibit P.

**C.     Notices Of Default, Acceleration And Demand For Payment**

37.     Under Section 6 of the Cash Management Agreement, Borrower is required to

deliver to Lender a Quarterly Accounting (as defined in the Cash Management Agreement) no

later than twenty days following the end of each calendar quarter.  *See* Ex. E [Cash Management

Agreement] at § 6(d).

38.     Further, the Loan Agreement requires Borrower to comply with certain periodic

reporting obligations, including the submission of an Officer's Certificate (as defined in the Loan

Agreement.  *See* Ex. B [Loan Agreement] at § 4.1.4.

39.     On November 8, 2017, Lender sent a letter to Borrower and Patel, notifying them

that: (a) a Franchise Agreement Trigger Event (as defined in the Cash Management Agreement)

had occurred based on Borrower's failure to enter into an acceptable franchise agreement

extension 24 months prior to the then applicable expiration date of the Franchise Agreement; and

(b) Borrower had failed to deliver to Lender a Quarterly Accounting for the calendar quarter

ending September 30, 2017, which had been due on October 20, 2017, pursuant to Section 6(d) of the Cash Management Agreement.   In the letter, Lender further demanded that Borrower timely submit all financial reports required under the Loan Agreement, including an Officer's Certificate pursuant to Section 4.14(c) of the Loan Agreement.

40.     A true and correct copy of the original November 8, 2017 letter is attached hereto as Exhibit Q.

41.     Borrower's failure to deliver the required officer's certificate and other financial documents constituted an "Event of Default" under the Loan Documents.  *See* Ex. B [Loan Agreement] at § 7.1.

42.     On December 11, 2017, Lender sent a letter to Borrower and Patel notifying them that the Events of Default referenced in Lender's November 8, 2017 letter had not been cured, the Loan was in default and Lender had accelerated the Loan.  Lender demanded immediate payment for all amounts due under the Loan.

43.     A true and correct copy of the December 11, 2017 letter is attached hereto as Exhibit R.

44.     As of June 21, 2019, the following sums were due on the Loan, in addition to Lender's attorneys' fees and costs:

| | |
|---|---|
| Principal | $7,692,910.76 |
| Interest (reflects application of Reserve funds) | $37,695.26 |
| Default Interest | $606,642.29 |
| Late Fees | $8,181.04 |
| Property Protection Advances | 399.17 |
| Interest Accrued on Lender Advances | $27.80 |
| Yield Maintenance | $1,247,601.72 |
| Suspense Reserve Balance | ($7,118.06) |
| Tax Reserve Balance | ($156,314.14) |
| Insurance Reserve Balance | ($50,683.28) |
| Other Reserve Balance | ($269,824.65) |
| **Total** | **$9,109,517.91** |

45.     Non-default interest continues to accrue on the Loan from and after June 21, 2019 at a rate of 5.88% per annum ($1,256.51 per diem).  In addition, default interest continues to accrue on the Loan (above and beyond the non-default interest rate) from and after June 21, 2019 at a rate of 5.00% per annum ($1,068.46 per diem).

46.     In addition to the non-default and default interest continuing to accrue daily on the Loan, the following amounts are due and owing pursuant to the Loan Documents: (a) all of Lender's attorneys' fees and costs that have been incurred and will be incurred in connection with Borrower's default and Lender's exercise of its remedies under the Loan Documents; and (b) all other charges, costs and fees available to Lender under the Loan Documents and applicable law.

**D.     Unauthorized Termination Of The Franchise Agreement And Unauthorized Execution Of The 2018 Franchise Agreement**

47.     On or about March 23, 2018, Borrower executed a Relicensing/Brand Change License Agreement with Franchisor (the "2018 Franchise Agreement"), terminating the Franchise Agreement.

48.     A true and correct copy of the original 2018 Franchise Agreement is attached hereto as Exhibit S.

49.     The Franchise Agreement granted a license to Borrower, among other things, to use the "Holiday Inn Express" reservation system and brand in association with the Hotel.

50.     The 2018 Franchise Agreement granted a license to Borrower, among other things, to use the "Holiday Inn" reservation system and brand in association with the Hotel.

51.     Pursuant to Section 16(D) of the 2018 Franchise Agreement, the conversion of the Hotel from a limited service Holiday Inn Express to a full service Holiday Inn requires Borrower

8

to make extensive multi-million dollar renovations to the Hotel to meet the Holiday Inn brand standards, including the construction of a restaurant at the Hotel.

52.     Borrower did not seek Lender's consent prior to its termination of the Franchise Agreement or execution of the 2018 Franchise Agreement.

53.     Lender did not consent, and has not consented, to the termination of the Franchise Agreement and execution of the 2018 Franchise Agreement.

54.     Section 4.1.9 of the Loan Agreement states that Borrower "shall not, without prior consent of Lender, (1) surrender, terminate, cancel, modify, renew, amend, or extend the Franchise Agreement…"  Section 4.1.9 of the Loan Agreement also states that "[u]pon the occurrence and during the continuation of an Event of Default, Borrower shall not exercise any rights, make any decisions, grant any approvals or otherwise take any action under the Franchise Agreement without the prior consent of Lender."  *See* Ex. B [Loan Agreement] at § 4.1.9.

55.     The termination of the Franchise Agreement and the execution of the 2018 Franchise Agreement are Events of Default under the Loan Agreement.  *See* Ex. B [Loan Agreement] at § 7.1.

56.     On April 25, 2018, Lender sent a letter to Borrower and Patel notifying them that the termination of the Franchise Agreement and the execution of the 2018 Franchise Agreement without Lender's prior consent were events of default under the Loan Documents.

57.     A true and correct copy of the original April 25, 2018 letter is attached hereto as Exhibit T.

**E.      Patel's Defaults Under The Guaranty**

58.     Under the Guaranty, Patel agreed to be personally liable for "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 8.6 of

the Loan Agreement." *See* Ex. G [Guaranty] at § 1.1(a).

       **i.**      **Patel's liability for Lender's losses**

59.      Section 8.6 of the Loan Agreement states that Borrower is personally liable to Lender "to the extent of any Loss arising out of or in connection with … (xiii) if the Franchise Agreement is amended, modified or terminated without Lender's prior written consent other than as expressly permitted by [the Loan Agreement]." *See* Ex. B [Loan Agreement] at § 8.6(g)(xiii).

60.      The Loan Agreement defines a "Loss[es]" as "any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense)." *See id.* at § 1.1.2.

61.      Borrower violated Section 4.1.9 the Loan Agreement by terminating the Franchise Agreement and executing the 2018 Franchise Agreement without Lender's consent.

62.      Accordingly, Patel is personally liable for all of Lender's losses, including, but not limited to, the cost to fulfill the Hotel's obligations under the 2018 Franchise Agreement including an extensive renovation of the Hotel to meet the brand standards of Holiday Inn pursuant to Section 16(D) of the 2018 Franchise Agreement.

      **ii.**     **Patel's liability for the full Loan debt**

63.      Patel is personally liable to Lender the full loan balance pursuant to Section 8.6 of the Loan Agreement due to Borrower's termination of the Franchise Agreement and execution of the 2018 Franchise Agreement without Lender's consent.

64.      Section 8.6 of the Loan Agreement states that "[t]he Debt shall be fully recourse to Borrower in the event that any of the following occur: (2) Borrower fails to obtain Lender's

prior consent to any Indebtedness except to the extent expressly permitted by this Agreement."

65.     Borrower's obligations under the Franchise Agreement constituted "Indebtedness" under Section 1.1.1 of the Loan Agreement, which defines "Indebtedness" as "any debt or liability, secured or unsecured, direct or contingent (including any guaranty)."

66.     The 2018 Franchise Agreement, among other things, requires Borrower to: (a) complete extensive renovations of the Hotel to comply with the Holiday Inn brand standard pursuant to Section 16(D); (b) pay fees to Franchisor pursuant to Section 3(B); and (c) pay significant damages and termination fees if Borrower fails to comply with the agreement pursuant to Section 12(E).

67.     Borrower incurred Indebtedness without Lender's consent by executing the 2018 Franchise Agreement and Patel is therefore liable for the full Loan debt.

68.     In addition, Section 8.6 of the Loan Agreement states that "[t]he Debt shall be fully recourse to Borrower in the event that any of the following occur: (9) Borrower fails to enter into an Acceptable Franchise Agreement Extension."

69.     An "Acceptable Franchise Agreement Extension" is defined under the Loan Documents as "the execution by Borrower of either (i) an extension or a renewal of the Franchise Agreement with Franchisor, or (ii) a new franchise agreement with a franchisor of another 'Upper Midscale Brand' (as defined by Smith Travel Research) with, in either clause (i) or (ii), a term expiring no earlier than two (2) years after the Stated Maturity Date and having terms and conditions reasonably acceptable to Lender."  *See* Ex. B [Loan Agreement] at § 1.1.1; Ex. E [Cash Management Agreement] at § 2.

70.     Borrower's termination of the Franchise Agreement and execution of the 2018 Franchise Agreement without Lender's consent constituted a failure to execute: (a) an extension

124320-0010.0001/144413428.3

or renewal of the Franchise Agreement; or (b) a new franchise agreement with a franchisor of another Upper Midscale Brand having terms and conditions reasonably acceptable to Lender.

71.     Accordingly, Patel is liable for the full Loan debt.

**COUNT I**
**BREACH OF CONTRACT — GUARANTY**

72.     Lender hereby restates and incorporates Paragraphs 1 through 71 as fully set forth herein.

73.     Patel entered into a valid and enforceable contract when he executed the Guaranty.

74.     Lender and its predecessors in interest have fully performed and fulfilled all of the terms and conditions of the Guaranty and other Loan Documents that they agreed to perform and fulfill.

75.     Patel has failed to perform his obligations under the Guaranty by failing to pay Lender for its losses associated with the unauthorized termination of the Franchise Agreement and unauthorized execution of the 2018 Franchise Agreement.

76.     Lender has been damaged and continues to be damaged by Patel's breach of the Guaranty.

77.     Lender has been compelled to employ and retain attorneys to represent and advise it in connection with this action and Lender's enforcement of its rights under the Loan Documents.

78.     The Guaranty provides that Patel must reimburse Lender "for all expenses (including counsel fees) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of [the] Guaranty." *See* Ex. G [Guaranty] at § 1.4.

WHEREFORE, Lender prays that judgment be entered in its favor and against Patel as follows:

    (A)    A judgment in favor of Lender and against Patel on Lender's claim for breach of the Guaranty in an amount to be determined at trial;

    (B)    A judgment in favor of Lender and against Patel for Lender's reasonable attorneys' fees and litigation expenses; and

    (C)    Such other and further relief as the Court deems just and reasonable.

## COUNT II
## BREACH OF CONTRACT — GUARANTY

79.    Lender hereby restates and incorporates Paragraphs 1 through 78 as fully set forth herein.

80.    Patel entered into a valid and enforceable contract when he executed the Guaranty.

81.    Lender and its predecessors in interest have fully performed and fulfilled all of the terms and conditions of the Guaranty and other Loan Documents that they agreed to perform and fulfill.

82.    Patel has failed to perform his obligations under the Guaranty by failing to pay Lender all principal, interest and other amounts due on the Loan.

83.    Lender has been damaged and continues to be damaged by Patel's breach of the Guaranty.

84.    Lender has been compelled to employ and retain attorneys to represent and advise it in connection with this action and Lender's enforcement of its rights under the Loan Documents.

85.    The Guaranty provides that Patel must reimburse Lender "for all expenses (including counsel fees) incurred by Lender in connection with the collection of the Guaranteed

124320-0010.0001/144413428.3

Obligations or any portion thereof or with the enforcement of [the] Guaranty." *See* Ex. G

[Guaranty] at § 1.4.

WHEREFORE, Lender prays that judgment be entered in its favor and against Patel as

follows:

(A)     A judgment in favor of Lender and against Patel on Lender's claim for breach of the Guaranty in an amount to be determined at trial;

(B)     A judgment in favor of Lender and against Patel for Lender's reasonable attorneys' fees and litigation expenses; and

(C)     Such other and further relief as the Court deems just and reasonable.

Dated: June 28, 2019                    By:     */s/ Jeffrey D. V*anacore
                                                Jeffrey D. Vanacore, Esq.
                                                Perkins Coie LLP
                                                1155 Avenue of the Americas, 22nd Floor
                                                New York, NY  10036
                                                212.262.6900
                                                JVanacore@perkinscoie.com

                                                *Attorneys for Lender*

124320-0010.0001/144413428.3